### SECURITY MORTGAGE AND TRUST COMPANY
### v. JOHN A. GILL.

#### No. 918.

**Apportionment of Rent—Mortgagor and Mortgagee.**—As against a mortgagee holding under a mortgage executed and recorded prior to the making of a lease contract, the mortgagor has the power by such lease contract to sever the rent accrued and to accrue before foreclosure, from the reversion; the mortgagor taking a note for such rent may indorse it; the holder becomes entitled to the rent up to date of foreclosure. After foreclosure the rent would go with the reversion.

APPEAL from Falls. Tried below before Hon. L. W. GOODRICH.

*De Edward Greer* and *Martin & Eddins*, for appellant.—1. The foreclosure sale under a mortgage executed and duly recorded before a contract of lease is made by the mortgagor, cuts off all title and rights of possession in the lessee. 2 Jones on Mort., 3 ed., p. 603, sec. 1696; 1 Jones on Mort., 3 ed., p. 679, sec. 796; McDermet v. Burke, 16 Cal., 580; Russum v. Wanser, 53 Md., 92; Henshaw v. Wells, 9 Humph. (Tenn.), 568; 52 Barb. (N. Y.), 377; 43 N. Y., 462.

2. The owner of the reversion or fee at the time rent falls due is entitled to the entire sum then due. Porter v. Sweeney, 61 Texas, 216; Hearne v. Lewis, 78 Texas, 276; Shultz v. Sprein, 1 Ct. App. C. C., secs. 917–919; Johnson & Brein v. Doss, 1 Ct. App. C. C., sec. 1076; 3 Kent Com., 469; 16 Miss., 41; 5 Paige Chan., 633; Martin v. Martin, 61 Am. Dec., 364; Burdins v. Thayer, 37 Am. Dec., 118, and note; Mussy v. Holt, 55 Am. Dec., 234; Butt v. Elliett, 19 Wall., 544; 1 Washb. Real Prop., 127; Wood's Law of Land and Ten., 476.

3. A purchaser of notes given for the rent of land mortgaged before the rent contract was made, and having notice of the mortgage, buys them at his peril; and if the title of the lessor is divested by foreclosure before the rent becomes due, the owner of the land at the time the rent is due is entitled to it, as against the purchaser of the rent notes. Hearne v. Lewis, 78 Texas, 276; Johnson & Brien v. Doss, 1 Ct. App. C. C., sec. 1076; Martin v. Martin, 61 Am. Dec., 364; Butt v. Elliett, 19 Wall., 544; 37 Am. Dec., 118.

*Rice & Bartlett*, for appellee.—1. A mortgagor before foreclosure sale can make a valid contract of lease, and his lessee will be entitled to the emblements and crops planted by him and growing at the time of sale, and to the possession to the extent of ingress and egress in gathering same, as against the purchaser under said foreclosure sale. Willis v. Moore, 59 Texas, 628; Duty v. Grayham, 12 Texas, 427;

Wright v. Henderson, 12 Texas, 44; Wooten v. Wheeler, 22 Texas, 338; 1 Freem. on Ex., sec. 113; 2 Taylor's Landl. and Ten., sec. 536; 1 Washb. Real Prop., marg. p. 106; Allen v. Carpenter, 15 Mich., 25.

2. The owner of the fee acquired by purchase under foreclosure sale of a mortgage duly recorded, but containing no expressed pledge as to the crops to be grown on the mortgaged premises, is not entitled to the rents due or not due arising from the crops and emblements then growing, as against the transferee of same from the mortgagor made prior to the foreclosure sale. Willis v. Moore, 59 Texas, 628; 2 Freem. on Ex., sec. 113; Bittinger v. Baker, 70 Am. Dec., 154; 6 Laws. Rights, Rem. and Prac., sec. 3033; Dewey v. Latson, 6 Cal., 609; Hecht v. Dittmann, 56 Iowa, 679; 41 Am. Rep., 131; 1 Washb. on Real Prop., *338–340; Berthold v. Hollman, 12 Minn., 335; Jones on Mort., 4 ed., secs. 670–778.

3. The mortgagor of land in this State has the right to possession, and can lease and take rent notes for the same, and if the notes are transferred, the rights of the transferee thereto and to his lien on the growing crops is not liable to be defeated or impaired by subsequent default and foreclosure sale under the mortgage. 2 Taylor's Landl. and Ten., sec. 536; 15 Am. and Eng. Encyc. of Law, 813, and note.

4. A mortgagor in possession leases the mortgaged premises, and subsequently default is made by the mortgagor and the mortgage foreclosed. There is no privity of contract between the purchaser at foreclosure sale and the lessee, and the purchaser can maintain no action against the lessee to recover rents due under said lease. 2 Taylor's Landl. and Ten., sec. 537; Wiltsie on Mort. Foreclosure, secs. 558, 660; Jones on Mort., 4 ed., sec. 778; 1 Washb. Real Prop., marg. p. 103; Gartside v. Outley, 11 Am. Rep., 59; Buckout v. Swift, 87 Am. Dec., 90; Tiedem. on Real Prop., enlarged ed., sec. 324, and cases cited; Folsom v. Carli, 6 Minn., 420.

KEY, ASSOCIATE JUSTICE.—Appellant's first amended original petition, omitting formal parts, contains the following averments, viz: That on the 20th day of July, 1889, one J. T. Somerville executed a deed of trust or mortgage on the 600 acres of land, for the rent of which the suit was brought, to secure appellant in the payment of six notes, one for $86.65, and five for $240 each, due on the 1st days of December of 1889, 1890, 1891, 1892, 1893, and 1894, respectively. That it was stipulated in said deed of trust, that if any of said notes should mature and not be paid, at the option of the legal holder of said notes all of the same should at once become due and payable. That default was made in the payment of the one of said notes which matured December 1, 1891, and appellant, on the 9th of May, 1892, exercised its option and declared all of said notes to be then due and payable, and had the trustee in the mortgage or deed of trust to advertise and sell the 600 acres of land covered by the mortgage, on the 8th of June, 1892; and appellant became the purchaser and received from the trustee a

good and valid deed therefor, and thereby became the legal owner of said land on the 8th day of June, 1892, and has ever since been the owner of the same, and entitled to the possession thereof and the rents and profits from the same.    That on the 27th of November, 1891, Somerville, the mortgagor, made a lease of the 600 acres of land to appellee B. Bush for the year 1892, and that appellee Bush agreed to pay Somerville for the use of said land for the year 1892 the sum of $1200, and gave his notes for said amount, to wit: three notes for $400 each, due respectively October 1, October 20, and November 20, 1892. That Somerville transferred the notes to the appellee John A. Gill, and that Gill is demanding that the appellee Bush pay to him said amount of $1200 for the rents of said land, and hinders and prevents Bush from paying it to plaintiff (appellant).    That the reasonable rental value of the farm is $1500 a year, and the appellant is entitled to rent for the year 1892.    That if appellee Gill paid a valuable consideration for said rent notes (which is not admitted, but denied), he bought the same with full knowledge, both actual and constructive, that Somerville was, at the time of the alleged transfer of said notes to him, in default in paying plaintiff the mortgage notes; and that, under the deed of trust securing the same, appellant had the right and power at any time to foreclose the mortgage and divest the said Somerville, the lessor, of all right to the possession of the land and undue rents thereon.    Appellant prayed for the rents due for said farm for the year 1892, and for general and special relief.

The defendant Bush answered, that he owed the money, $1200, and deposited the same in court, and prayed that the court determine to whom it belonged.    Defendant Gill interposed a general demurrer to appellant's petition, which was sustained; and judgment was rendered against Bush in favor of Gill for the full amount of the notes.    Only the plaintiff has appealed, and the correctness of the court's ruling on the demurrer is the only question to be decided.

At the common law, as a general rule, rent not due when the land is sold is regarded as an incident to the reversion and passes with it to the purchaser, and is not apportionable as to time.    This doctrine was applied in Hearne v. Lewis, 78 Texas, 276, where it was held, that a note given by a tenant for rent and payable to an administrator was owing to and collectible by one who, during the term of the lease, but before the maturity of the note, purchased the rented premises at a probate sale made by the administrator.    To this general rule there are exceptions, however, and the rent may be severed from the reversion, in which case a subsequent grant of the reversion does not ordinarily pass the rent.    12 Am. and Eng. Encyc. of Law, 754.    There can be but little doubt that an assignment of a note given for rent will, in law, sever the rent from the land.

In Childers v. Smith, 10 B. Monroe, 235, the Supreme Court of Kentucky say: "The third plea relies upon the common law principle that the legal title to the rent is incident to the reversion and passes

with it, unless expressly reserved in the grant. But this principle, though substantially true as stated, is not literally or universally so. For the rent, though an incident of the reversion, may be separated from it by a grant of the rent alone, in which case a subsequent grant of the reversion does not pass the rent. And if the $200 secured by this note is to be regarded as rent, and if the five years' lease for which it was to be paid was carved out of the present legal interest and estate of the plaintiff, leaving the immediate reversion in him, then, as the execution of the note for this rent to a third person certainly vested in him the legal title to the rent (at least as far as secured by the note), it seems necessarily to follow that the legal title to the rent and to the reversion, being thus in different persons, and therefore actually separated, the former was no longer an incident to the latter, and did not and could not pass by a subsequent grant of the reversion."

Considering the same subject, the Supreme Court of Alabama, in Insurance Company v. Oliver, 78 Alabama, 158, used this language: "A different rule applies when the claim for rent is assigned while the lessor is the owner of the reversion. Being the holder and owner of the claim, and having the right to transfer it, his assignment passes to the assignee all his rights thereto, and effectually severs the rent from the reversion. If the lessor subsequently conveys the reversion, the rent, having been thus severed, does not pass as incident thereto. The legal effect of the deed can not operate to pass what the lessor does not own, however general and absolute may be its terms."

Our own Supreme Court, in Willis v. Moore, 59 Texas, 628, held, that the sale of the crop growing or standing in the field ready to be harvested would operate as a severance of the crop from the land, so that the crop would not pass to the purchaser of the land. See also 1 Washburn's Real Property, fifth edition, page *338.

This narrows the case down to one controlling question, which may be thus stated: As against a mortgagee holding under a mortgage executed and recorded prior to the making of the lease contract, has a mortgagor the power to sever the rent from the reversion, so as to prevent an application of the doctrine applied in Hearne v. Lewis, supra?

If the common law rule, that a mortgage vests title with right to possession and revenues in the mortgagee, prevailed in this State, he might have some ground upon which to predicate an objection to the mortgagor's assigning a claim for rent owing for the use of the premises anterior to a foreclosure of the mortgage. But such is not the rule here. With us, it is well settled that a mortgage is a mere lien upon the property and vests no estate on the mortgagee; and in this respect there is no distinction between a mortgage and a deed of trust. Wright v. Henderson, 12 Texas, 43.

In view of this difference between the rights of the mortgagee at common law and under the law of this State, it was held in Willis v. Moore, supra, that an unharvested crop raised by the mortgagor upon the mortgaged premises belonged to him, and that his sale thereof be-

fore the crop was actually severed from the land vested title thereto in his vendee as against a purchaser of the land at a foreclosure sale under a mortgage, although the mortgage was executed before the crop was planted. Though the reason just stated was held to be conclusive in that case, the decision is also supported, as shown by the opinion, by an application of the doctrine that a sale of an unharvested crop severs it from the land, even as against one subsequently purchasing under a pre-existing recorded lien. It is there said: "A mortgagor is entitled to sever in law or fact the crops which stand upon his land at any time prior to the destruction of his title by sale under the mortgage; this results from his ownership and consequent right to the use and profits of the land, and the mortgage is taken with knowledge of that fact."

The question then arises, if the mortgagor, prior to the foreclosure sale, can, by transferring his right to the growing crop, thereby sever it from the land, so that it will not pass to the purchaser at a sale made under a mortgage, can he not also lease the premises and, by assigning his claim for rent, sever the rent from the land, so that a sale of the land under a prior recorded mortgage will not carry with it the right to demand the rent thereafter falling due upon the lease contract?

It seems to us that the doctrine underlying the decision in Willis v. Moore, supra, requires an affirmative answer to this question. As the mortgagee has no legal or equitable right to the use of the premises or to rent owing therefor prior to the foreclosure of his mortgage, the payment of such rent to the mortgagor or to his assignee does not impair the mortgagee's security, nor otherwise injuriously affect his rights. Upon what principle, then, can he object to the mortgagor's assigning his demand for rent for the use of the premises prior to the foreclosure of the mortgage? It is not necessary that the purchaser at the foreclosure sale should be permitted to enforce the rent contract in order to the full enjoyment of the premises so purchased. The lease is not binding on him, and although its term may not have expired at the time of the sale, it is extinguished thereby, and the purchaser may demand possession and eject the tenant. 2 Jones on Mort., sec. 1696; Willis v. Moore, supra.

Where the rented premises are used for agricultural purposes and the tenant has a crop standing thereon, doubtless he would be permitted to retain possession, or at least be allowed the right of ingress and egress for a time reasonably sufficient to harvest his crop. But with this exception the purchaser would be entitled to immediate possession; and the mortgagee's power to confer this right together with title to the land affords him all the protection he is entitled to claim. Therefore, will the bare fact that the mortgagor has made a lease contract, one result of which will be—if he remains the owner of his claim against the tenant for rent, and the mortgage is foreclosed before the claim falls due—to vest in the purchaser under the mortgage, by an application of a harsh rule of the common law, a right to such

demand for rent, destroy the mortgagor's power to assign his claim for rent, and thereby sever it from the land, so that it will not pass to the purchaser at a sale made under the mortgage? We think not. Such a holding, as applied to this case, would be equivalent to a declaration that an act, otherwise legitimate and proper, which prevented appellant from obtaining that which in equity and good conscience it was not entitled to, was a wrong. We think Somerville, the mortgagor, could and did lawfully sever the demand for rent, so that it would not and did not pass by the foreclosure sale of the land.

In deciding this case, we have kept in mind the fact that appellant's cause of action is based upon the rent notes. The petition does not charge that Bush, the tenant, remained in possession of the property after appellant acquired title thereto. In fact, while it states the annual rental value of the land, it does not show that either of the appellees ever possessed or used it after the foreclosure sale. Facts may have existed which would have authorized a recovery for use of the land after appellant acquired title thereto, and if any part of such recovery resulted from Bush's use of the premises during any portion of the term of his lease, to that extent there would be a failure of consideration in the notes here involved, and a pro tanto reduction of his liability thereon. But such facts are not alleged in appellant's petition.

Appellant lays stress upon the fact that the petition charges Gill with notice of the existence of the mortgage and appellant's rights thereunder when he acquired the rent notes. Such notice, in our opinion, is of no importance, because if Somerville, the mortgagor, had the right to assign the notes and thereby sever the rent, any person, with or without notice, could purchase them.

Our conclusion is, that the general demurrer to appellant's petition was properly sustained, and therefore the judgment will be affirmed.

*Affirmed.*

Delivered October 10, 1894.