Grace BUNTING, Petitioner,

v.

Anita Martice King PEARSON, Respondent.

No. B–671.

Supreme Court of Texas.

July 10, 1968.

Lemon, Close & Atkinson, Robert D. Lemon, Perryton, for petitioner.

Gene E. Steed, Perryton, for respondent.

HAMILTON, Justice.

Prior to the adoption of the Texas Probate Code, V.A.T.S.[1] in 1955, this Court had repeatedly held that the general provisions of the Revised Statutes regulating the procedures for establishing claims against an estate were not applicable to claims against an estate administered by an independent executor. Smyth v. Caswell, 65 Tex. 379 (1886); Roy v. Whitaker, 92 Tex. 346, 48 S.W. 892, 49 S.W. 367 (1898); Fischer v. Britton, 125 Tex. 505, 83 S.W.2d 305 (1935). The court of civil appeals, in reversing a trial court judgment, has held that this rule was radically changed by the provisions of the Probate Code as amended and that a claim presented to an independent executor and not acted upon within thirty days must be considered as rejected and that as suit was not filed thereon within ninety days thereafter, a recovery on the claim was barred. 423 S.W.2d 177.

The petitioner-plaintiff, Grace Bunting, brought this action to recover the reasonable value of services rendered by her for Bertha Helen King, now deceased. In her will, which was duly probated, Mrs. King appointed her daughter, Anita Martice King Pearson, independent executrix of her estate. On July 28, 1964 and on January 13, 1965, the plaintiff presented claims to the executrix who took no action with reference thereto. On July 19, 1965, the plaintiff brought suit against the executrix for services rendered the testatrix between April 1963 and April 1964. These alleged services were the basis of the claims theretofore presented to the executrix. The July 1964 claim was simply a money claim for $1,200.00. The January 1965 claim sets out the services rendered. A motion for summary judgment filed by the executrix was overruled, and after a jury trial judgment

for $1,200.00 was rendered for the plaintiff. For the reasons heretofore stated, the Court of Civil Appeals reversed. We disagree.

A somewhat detailed examination of certain provisions of the Probate Code as originally enacted in 1955 and as amended in 1957 is necessary. We set out these provisions and italicize the portions thereof which are deemed particularly pertinent here:

"§ 3. Definitions and Use of Terms

"When used in this Code, *unless otherwise apparent from the context*: * * *

"(aa) 'Personal representative' or *'Representative' includes* executor, *independent executor*, administrator, temporary administrator, guardian, and temporary guardian, together with their successors. *The inclusion of independent executors herein shall not be held to subject such representatives to control of the courts in probate matters with respect to settlement of estates except as expressly provided by law.* As amended Acts 1957, p. 53, ch. 31, § 2(a)."

"§ 145. Independent Administration

"Any person capable of making a will may provide in his will that no other action shall be had in the county court in relation to the settlement of his estate than the probating and recording of his will, and the return of an inventory, appraisement, and list of claims of his estate. When such will has been probated, and the inventory, appraisement, and list aforesaid has been filed by the executor and approved by the court, *as long as the estate is represented by an independent executor, further action of any nature shall not be had in the court except where this Code specifically and explicitly provides for some action in the court.* As amended Acts 1957, 55th Leg., p. 53 ch. 31, § 2(b)."

---

1. Acts 1955, 54th Leg., ch. 55, p. 88.

"§ 146. Payment of Claims and Delivery of Exemptions and Allowances

"*An independent executor*, in his administration of an estate, although free from the control of the court, shall nevertheless, independently of and without application to, or any action in or by the court, receive presentation of and classify, allow, and pay, or reject, claims against the estate in the *same order of priority, classification, and proration prescribed in this Code,* and set aside and deliver to those entitled thereto exempt property and allowances for support, and in lieu of homestead, as prescribed in this Code, *to the same extent and result* as if his actions had been accomplished in, and under orders of the court. As amended Acts 1957, 55th Leg., p. 53, ch. 31, § 2(c)."

"§ 309. Memorandum of Allowance or Rejection of Claim

"When a *duly authenticated claim* against an estate is presented to the *representative, or filed with the clerk* as heretofore provided, he shall, within thirty days after the claim is presented *or filed,* endorse thereon, or annex thereto, a memorandum signed by him, stating the time of presentation *or filing of the claim,* and that he allows or rejects it, or what portion thereof he allows or rejects. Acts 1955, 54th Leg., p. 88, ch. 55."

"§ 310. Failure to Endorse or Annex Memorandum

"The failure of a representative of an estate to endorse on, or annex to, a claim presented to him, his allowance or rejection thereof within thirty days after the claim was presented, shall constitute a rejection of the claim. If the claim is thereafter established by suit, the costs shall be taxed against the representative, individually, or *he may be removed on the written complaint of any person interested in the claim,* after personal service of citation, hearing, and proof, as in other cases of removal. Acts 1955, 54th Leg., p. 88, ch. 55."

"§ 313. Suit on Rejected Claim

"When a claim or a part thereof has been rejected by the representative, the claimant shall institute suit thereon within ninety days after such rejection, or the claim shall be barred. When a rejected claim is sued on, the endorsement made on or annexed thereto shall be taken to be true without further proof, unless denied under oath. When a rejected claim or part thereof has been established by suit, *no execution shall issue,* but the judgment shall be certified within thirty days after rendition and *filed in the court* in which the cause is pending, *entered upon the claim docket, classified by the court,* and handled as if originally *allowed and approved in* due course of administration. Acts 1955, 54th Leg., p. 88, ch. 55."

The Court of Civil Appeals in reaching the conclusion that sections 309, 310 and 313 of the Probate Code apply to "independent executors", held that the term "representative" as used in those provisions included "independent executor". We do not agree with this conclusion. Section three of the Code provides that the term "representative" includes "independent executor" *unless otherwise apparent from the context.* It is apparent from the context of sections 309, 310 and 313 that these sections are concerned with authenticated claims which are designed to be processed through and under the direction of the probate court. Section 309 directs what the "representative" should do when an authenticated claim is filed with him, or *the clerk.* Section 310 provides that if the "representative" fails to allow or reject the claim, and it is thereafter established by suit, he may be removed on the written complaint of any person interested in the claim. Section 313 provides that if judgment is taken in the suit on a rejected claim no execution shall issue, but a certified copy of the judgment *shall be filed in the court, entered on the claim docket* and classified by the court. This section not only leads to court supervision, but is in direct conflict with Section 147, which pro-

vides a claim against an estate in independent administration may be enforced by levying execution on the estate.

■ It therefore, becomes *otherwise apparent* that these sections are not applicable to an "independent executor", because to apply them would be inconsistent with the provisions of Section 145 of the Probate Code; the general purpose of which is to free the "independent executor" from the control of the court, except where the Code specifically and explicitly provides otherwise.

■ If, then, we are not compelled to substitute the words "independent executor" for the term "representative" in the three sections above discussed, they may not be made applicable to the "independent executor" unless some provision of the Probate Code explicitly and specifically makes them applicable. It is argued that Section 146 does this very thing. We cannot agree with that argument. Prior to the adoption of the Code the courts had held that "independent executors" were required to handle claims in accordance with provisions of the statute dealing with classifications, priority and proration of claims. It appears to us that Section 146 carries forward the law in this respect, as it existed prior to the adoption of the code. The phrase "in the same order of priority, classification, and proration prescribed in this code" refers to Sections 322 dealing with classification; 321 dealing with proration; and 320 dealing with priority. The only other part of the Code that this section could have reference to is the section dealing with exempt property and allowances. No language in Section 146 can reasonably be construed to refer to Sections 309, 310, and 313, in such a way as to make them applicable to an "independent executor".

Our holding in this case is in harmony with the Morehead, Foreword, Texas Probate Code, 17A Vernon's Tex.Civ.Stat.Ann. iv (1956), which was quoted with approval in the case of Bell v. Still, Tex.Civ.App., 389 S.W.2d 605, as follows:

"The Texas Probate Code was not designed to make any radical changes in the former probate law * * *. The primary goal of those who worked on the Code was to eliminate the conflicts, to clarify the ambiguities, to fill the gaps, to modernize some of the language, and otherwise to deal with particular statutes which had proved productive of problems. At the same time, however, the draftsmen sedulously sought to avoid changing any statute unless a change was deemed necessary for one of the aforementioned reasons."

This Court adopted as its opinion the opinion of the Court of Civil Appeals in that case. Bell v. Still, 403 S.W.2d 353 (1966).

We reverse the judgment of the Court of Civil Appeals and affirm judgment of the trial court.