Yvette **ALTERMAN**, Appellant,

v.

**FROST NATIONAL BANK OF SAN ANTONIO,** Appellee.

No. 04–83–00260–CV.

Court of Appeals of Texas, San Antonio.

Aug. 29, 1984.

Charles J. Muller, III, San Antonio, for appellant.

Thomas H. Crofts, Jr., Groce, Locke & Hebdon, San Antonio, for appellee.

Before BUTTS, REEVES and TIJERINA, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a declaratory judgment that the claim of plaintiff, Frost National Bank of San Antonio, unsecured creditor of the estate of William Alterman, was legally exhibited within six months after the original grant of letters testamentary to the independent executrix, Yvette Alterman. The judgment classified the claim of Frost National Bank as "a pre-amendment class 4 claim or a post-amendment class 5 claim," pursuant to TEX. PROB.CODE ANN. section 322 (Vernon 1980 and Vernon Supp.1984).[1] Trial was before the court, which filed findings of fact and conclusions of law. We affirm.

A chronology of pertinent events follows:

January 13 or 14, 1981—William Alterman died

January 27, 1981—Will of William Alterman admitted to probate.

January 28, 1981—Wife Yvette Alterman appointed independent executrix of William Alterman's estate.

February 12, 1981—Attorney for estate, Richard Goldsmith, wrote letter to Frost National Bank requesting list of outstanding obligations of Security Construction and William Alterman (at date of his death, William Alterman was sole shareholder, director, and president of Security Construction Co.)

February 20, 1981—Rose Guerra, executive assistant to Vice President of Frost National Bank, replied to letter of February 12, 1981, listing the notes outstanding of William Alterman (this letter is within 6 month statutory period)

September 18, 1981—Frost National Bank filed "Authenticated Unsecured Claim" (this is past 6 month statutory period)

Defendant brings three points of error based on a single contention: the evidence is both legally and factually insufficient to sustain the findings of fact and conclusions of law that the claim of plaintiff was legally exhibited within 6 months after the original grant of letters testamentary.

■ Findings of fact have the same force and effect as jury answers to special issues and are treated with the same dignity on appellate review. 4 R. MCDONALD, TEXAS CIVIL PRACTICE § 16.05 (1971). Under a "no evidence" challenge to the finding, the appellate court considers only the evidence, and reasonable inferences therefrom, tending to support the finding and disregards all evidence and inferences to the contrary. *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 609 (Tex. 1979). Where there is at least some evidence of probative force to support the finding under a "no evidence" attack, it is binding. *Id.* at 609–610.

\* \* \* \* \* \*

Class 5. All other claims legally exhibited within six months after the original grant of letters testamentary or of administration.

\* \* \* \* \* \*

Hereinafter, all statutory references are to the TEX.PROB.CODE ANN. (Vernon 1980 and Vernon Supp.1984).

---

1. The amendment to § 322 became effective January 1, 1982. Pre-amendment class 4 claims became the same as post-amendment class 5 claims:

§ 322. Classification of Claims Against Estates of Decedent

Claims against an estate of a decedent shall be classed and have priority of payment, as follows:

■ When a finding is attacked as not being supported by factually sufficient evidence, the appellate court must consider all of the evidence. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). The finding will be upheld unless it is so against the great weight and preponderance of the evidence as to be clearly and manifestly wrong. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Houston Natural Gas Corp. v. Pearce,* 311 S.W.2d 899, 903 (Tex.Civ.App.—Houston 1958, writ ref'd n.r.e.). We observe the conclusions of law are a mere restatement of the findings of fact which in turn restate rather than enlarge upon the judgment.

The parties do not challenge that the February 20 letter was "legally exhibited," pursuant to § 322. Both agree that "exhibit" is synonomous with "present." *See* BLACK'S LAW DICTIONARY 514 (5th ed. 1979).

Both plaintiff and defendant recognize the one dispositive issue: whether the letter of February 20, 1981 constituted a claim; thus, it is necessary to study the language of the letter of February 12 as well as the February 20 reply letter.

Applicable portions of the February 12 letter are:

February 12, 1981
Frost National Bank
P.O. Box 1600
San Antonio, TX 78296
ATTN: Commercial Loan Department
Gentlemen:

\* \* \* \* \* \*

We are aware that Mr. Alterman and his corporation had both borrowed substantial sums of money from Frost National Bank and that some of the corporate loans had been secured and/or guaranteed by Mr. Alterman personally. *We are now in the process of inventorying all of the assets and liabilities of Mr. Alterman's estate and similarly inventorying the assets and liabilities of the corporation.*

*We would appreciate it if you would furnish this office, at your earliest con-*

*venience, with a complete list of each outstanding obligation of Security Construction Company and of Mr. Alterman individually* at the date of Mr. Alterman's death on January 10, 1981 and as of the date of your reply. Please indicate the principle balance owed and the interest accrued on both dates. Also, please indicate the type of security, if any, which supports each loan and the extent of Mr. Alterman's individual guarantees to the Frost National Bank.

\* \* \* \* \* \*

Sincerely,
/S/ Richard Goldsmith
[Emphasis ours.]

Applicable portions of the February 20 response by plaintiff are:

February 20, 1981
Dear Mr. Goldsmith:
This will acknowledge receipt of your letter dated February 12, 1981 concerning the status of the Security Construction Company and William Alterman debt. *Enclosed is a list itemizing the Notes outstanding for William Alterman* as of January 12, 1981, and as of February 2, 1981. We are also enclosing a list indicating the balance in the Alterman and Security Construction Company checking accounts as of today.

If we may provide you with any additional information, please do not hesitate to call.

Yours very truly,
Rose Guerra
[Emphasis ours.]

Attachments to the February 20 letter include notes owed by Alterman or his construction company; the balance due on the note; amount of interest due; and per diem interest.

■ The requirement of the Probate Code for a formal authenticated claim does not apply in an independent administration. *See Bunting v. Pearson,* 430 S.W.2d 470, 472–473 (Tex.1968). We find that even though the February 20 letter does not expressly demand payment, it can, under the circumstances of this case, be con-

strued as a claim against the estate of William Alterman.

Defendant relies upon two cases where request for tracing of goods or notification of receipt of damaged good did not constitute a claim. *See Corbamex, S.A. v. Republic Carloading & Distributing Co.,* 378 S.W.2d 938, 940 (Tex.Civ.App.—San Antonio 1964, writ ref'd n.r.e.); *Texas & N.O.R. Co. v. Rosenblum,* 195 S.W.2d 433, 434 (Tex.Civ.App.—San Antonio 1946, writ ref'd).

These above noted bills of lading cases are inapposite. We look to the definition of claim in section 3(c) of the Probate Code. Claims include "liabilities of a decedent which survive...." The letter of February 12, considered in conjunction with the reply letter of February 20, identifies a claim. Goldsmith's letter of February 12 speaks of the deceased's "outstanding obligation" and plaintiff's letter of February 20 addresses the deceased's "outstanding notes," enclosing a particularized list. BLACK'S LAW DICTIONARY 994 (5th ed. 1979) defines *outstanding* as "existing as an adverse claim...." In using the word "outstanding," both parties referred to a legal status recognizing a claim. We hold the evidence to be both legally and factually sufficient to sustain the findings of fact and conclusions of law. Accordingly, we overrule the three points of error and affirm the judgment of the trial court.