The GROSS NATIONAL BANK OF SAN ANTONIO, Appellant,

v.

Johnnie MERCHANT et al., Appellees.

No. 14900.

Court of Civil Appeals of Texas, San Antonio.

Oct. 28, 1970.

Kampmann, Kampmann, Church & Burns, James E. Aderhold, San Antonio, for appellant.

F. N. Welmaker, Clemens, Knight, Weiss & Spencer, San Antonio, Ewers, Toothaker, Ewers, Abbott & Evins, Mc-Allen, Lagerquist, Shaw & Davis, San Antonio, for appellees.

KLINGEMAN, Justice.

Appellant, a judgment creditor of the estate of Dr. John C. Parsons, deceased, brought this suit to foreclose its judgment lien upon the homestead of the surviving widow after the land had been sold to third parties, wherein it asserted a lien upon the excess value of the land over the homestead exemption of $5,000.-00. Judgment was rendered after a non-jury trial that appellant take nothing against appellees, Miss Johnnie Merchant, grantee of said surviving widow, and her grantee, Wycliffe Bible Translators, Inc.; and cross-defendant, Ruby Parsons.

Dr. John C. Parsons executed a note in November, 1966, to the Gross National Bank in the sum of $7,613.97, secured by a chattel mortgage on a 1965 Cadillac automobile. Dr. Parsons died in 1967, and Ruby Parsons, the surviving wife, qualified as independent executrix of his estate. The inventory and appraisal filed in such an estate showed assets of less than $50,-000.00, with debts and claims against the estate in the amount greatly in excess of this amount. The only real estate owned by the estate was Lot 7 in Block 13, Olmos Park Estates, which property was the homestead of Dr. Parsons and wife, Ruby Parsons. In such inventory, Mrs. Parsons designates this property as the homestead of herself and two unmarried daughters. The lot involved was purchased by Dr. Parsons and his wife, Ruby Parsons, in 1955 for a consideration of $16,500.00; and sometime thereafter, the exact date of which is not ascertainable from the record, a residence was erected thereon by the Parsons.

In the inventory and appraisement filed in said estate, plaintiff's note in the amount of $7,613.97 is listed as a secured claim, being secured by the 1965 Cadillac. After the death of Dr. Parsons, the Cadillac automobile was sold for $3,050.00; and the proceeds thereof were paid to the plaintiff. Plaintiff thereafter instituted suit in the District Court of Bexar County, Texas, against the estate for the remaining $4,563.97, plus attorneys' fees in the amount of $456.39; and judgment was entered against the estate on October 23, 1967, for such amount. This judgment recites that it is an agreed judgment. After the judgment was rendered, it was abstracted in the Abstract of Judgment Records of Bexar County, Texas, on November 8, 1967. No lis pendens was ever filed in connection with such suit. On March 15, 1968, such property was sold by the estate to Miss Johnnie Merchant for a consideration of $90,000.00; and thereafter on September 27, 1968, Miss Merchant conveyed such property to Wycliffe Bible Translators, Inc., who subsequently conveyed such property to Robert L. Schupbach and wife, Helen James Schupbach, on February 4, 1969.

Ruby Parsons, as independent executrix of the estate of Dr. Parsons, awarded to herself a widow's allowance and family allowance for one year from the date of the death of her husband in the amount of $1,000.00 per month, or a total of $12,-000.00, and also an allowance of $1,000.00 in lieu of certain exempt property. Such allowance was awarded out of the non-

exempt proceeds of the sale of the homestead, and totally consumed the nonexempt proceeds.

On November 25, 1968, suit was filed by Gross National Bank against Miss Johnnie Merchant and Wycliffe Bible Translators, Inc., asking for judgment that the property above described is subject to a lien under the judgment which plaintiff had obtained against the estate of Dr. Parsons, and for foreclosure of its judgment lien. Ruby Parsons, individually and as independent executrix of the estate of Dr. Parsons, was made a cross-defendant by defendants, with recovery being asked against her in the event plaintiff should recover against defendants. Although Robert L. Schupbach and wife were owners of the subject property at the time this suit was tried, they were never made parties to such suit.

By one point of error plaintiff asserts that the trial court erred in holding that the judgment lien held by it against the estate of Dr. John C. Parsons, deceased, was extinguished and did not remain attached to the land. Plaintiff concedes that the widow's and family allowance takes precedence over all debts of the estate, except funeral expenses and expenses of last illness; that such widow's allowance can be awarded out of the proceeds of the sale of real estate owned by the estate should there not be personal property of the estate sufficient to raise such allowance; that the independent executrix of such estate was probably correct in awarding to herself her widow's and family allowance out of the proceeds of the nonexempt excess property of the homestead; and that the amount of such allowance was probably in all respects reasonable and necessary for the statutory year's support of the widow and her children. It is plaintiff's basic contention that even though the widow is entitled to receive the proceeds of the sale of nonexempt realty as a widow's and family allowance in preference to a judgment lien, that the lien itself is not extinguished and remains

attached to the property, and any purchaser of the property would take it subject to such lien.

It is settled that a homestead located in a city, town, or village may consist of one or more lots that do not exceed the value of $5,000.00, and that in determining the value of the lot or lots, the value of the improvements on the lots is not considered. See Vernon's Ann.St.Tex.Const. art. 16, Sec. 51; Vernon's Ann.Civ.St. art. 3833; Engbrock v. Haidusek, 95 S.W.2d 520 (Tex.Civ.App.—Austin 1936, writ ref'd). Plaintiff contends that the value of the lot involved here was in excess of $5,000.00 and was of the value of at least $16,500.-00, and that the nonexempt portion of the value of such lot would be at least $11,500.-00. Defendants assert that there is no evidence that at the time such lot acquired its homestead status, the land had a total value in excess of $5,000.00. It appears from the record that Dr. Parsons and wife purchased such lot in 1955 for the sum of $16,500.00, and there was testimony by a real estate expert that the value of land in Olmos Park Estates had increased since 1955, and that in his opinion the present value of the lot herein involved would be at least $16,500.00. Assuming that there is sufficient evidence to support a finding that the lot had a value of $16,500.00 at the time it became homestead property, we feel that the judgment of the trial court is still correct.

No findings of fact or conclusions of law were requested of or made by the trial court; and in the absence of such findings of fact and conclusions of law, every presumption consistent with the record must be indulged in favor of the trial court's judgment, and this court is required to affirm such judgment if it may do so on any theory of case finding support in the record. American Insurance Association v. Smith, 439 S.W.2d 418 (Tex.Civ.App.—Texarkana 1969, no writ); Southland Supply Company v. Gebhart, 439 S.W.2d 393 (Tex.Civ.App.)—Texarkana 1969, no writ); Page v. Superior Stone

Products, Inc., 412 S.W.2d 660 (Tex.Civ. App.—Austin 1967, writ ref'd n. r. e.); Moore v. Ham, 342 S.W.2d 825 (Tex.Civ. App.—Amarillo 1961, no writ); 4 Tex. Jur.2d Appeal and Error—Civil, § 806.

The Texas Probate Code provides how claims are to be classified[1], and the order in which such claims should be paid.[2] Under the Code, funeral expenses and expenses of last illness are to be first paid; allowances to the widow and children, second; expenses of administration, and expenses incurred in the preservation, safekeeping, and management of the estate, third; and other claims against the estate in the order of their classification, fourth.

■ Plaintiff's judgment lien was a fourth class claim against the estate. By its suit, plaintiff seeks to make its fourth class claim superior to claims of higher priority. To hold that the judgment lien of plaintiff was not extinguished and remained attached to the land would achieve this result, and would make the provisions of the Probate Code as to classification and payment of claims meaningless. It appears from the record that there was not enough money available in the estate to pay all of the creditors, and that the amount of the first, second and third class claims were considerably in excess of $11,500.00. Plaintiff concedes that the rights of the widow to have a year's support from an insolvent estate is absolute, and it shall not be taken for the debts of the estate. See Sec. 279, Probate Code. Sec. 290 of the Probate Code provides that the family allowance made for the support of the widow and the minor children shall be paid in preference to all other debts or charges against the estate, except the ex-

penses of the funeral and last illness of the deceased. It is undisputed that the excess of the value of the homestead land over $5,000.00 was expended for the widow's and family allowance, and claims of higher priority than plaintiff's.

The trial court did not err in holding that the judgment lien held by plaintiff was extinguished and did not remain attached to the land.

■ There is another valid reason why the judgment of the trial court should be affirmed. Sec. 306, Probate Code, requires a creditor with a preferred claim against the estate to make an election of whether it desires to have its claim allowed and approved as a matured secured claim, to be paid in due course of administration [§ 306(a) (1)], or whether it desires to have the claim allowed, approved and fixed as a preferred debt and lien against the specific property securing the indebtedness and paid according to the terms of the contract which secured the lien [§ 306(a) (2)]. Such section also provides that if the indebtedness is allowed and approved as a preferred claim against the specific property, no further claim shall be made against other assets of the estate by reason thereof [§ 306(c)]. It is to be remembered that the debt of plaintiff was secured by a chattel mortgage on the 1955 Cadillac automobile. Plaintiff's vice president testified that the Cadillac subject to such chattel mortgage was sold by the independent executrix, and the proceeds turned over to plaintiff; that plaintiff released its lien in exchange for the money; that it went after the proceeds of the sale of the car as a secured creditor; and that it was not going to put the money back into the estate and get its

---

1. Sec. 322, Probate Code—(1) Funeral expenses and expenses of last sickness not to exceed $1,000.00. (2) Expenses of administration and expenses incurred in the preservation, safekeeping, and management of the estate. (3) Claims secured by mortgage or other liens so far as the same can be paid out of the proceeds of the property subject to such

mortgage or other lien. (4) All other claims legally exhibited within one year after the original grant of letters testamentary or of administration. (5) All claims legally exhibited after the lapse of one year from the original grant of letters of testamentary or of administration.

2. Sec. 320, Probate Code.

pro rata share back as an unsecured creditor.

There is sufficient evidence in the record to support an implied finding that plaintiff made an election to have its claim approved as a preferred debt and lien against the specific property securing the indebtedness [the Cadillac automobile] under the provisions of the Probate Code, § 306(a) (2), and has no further claim.

The judgment of the trial court is affirmed.