SAN ANTONIO SAVINGS
ASSOCIATION,
Appellant,

v.

G. Ward BEAUDRY, Permanent Admin-
istrator of the Estate of Robert Lee
Roethlisberger, Deceased, and Universi-
ty Savings Association, Appellees.

No. 05–87–00996–CV.

Court of Appeals of Texas,
Dallas.

Feb. 16, 1989.

Rehearing Denied March 24, 1989.

the judgment of the trial court in part, reverse in part, and, in the interest of justice, remand the case for further proceedings.

## INTRODUCTION

Robert Lee Roethlisberger died intestate, leaving an estate, in the words of its administrator, "with substantial assets and even more substantial debt." Included in the estate was a residence ("the property") worth about $176,500.00, burdened by a first lien created by a deed of trust securing a debt of $194,235.52 to San Antonio Savings Association, and a second lien created by a deed of trust securing a debt of $41,858.63 to University Savings Association. University Savings presented its secured claim to the estate and requested a preferred lien against the property under section 306, which states in pertinent part:

Elizabeth J. Lindell and Sandee Bryan Marion, San Antonio, for appellant.

Catherine Tolliver, Dallas, for appellees.

Before KINKEADE, BURNETT[1] and WHITTINGTON[2], JJ.

KINKEADE[3], Justice.

■ The sole issue in this case is whether estate administrative expenses are entitled to payment prior to a preferred claim under section 306(a)(2) of the Texas Probate Code.[4] We hold that only those expenses directly attributable to preserving and maintaining the property subject to the preferred claim are entitled to priority and that not all the expenses claimed in this case are allowable. We therefore affirm

*Method of Handling Secured Claims*

(a) *Specifications of Claim.* When a secured claim against an estate is presented, the claimant shall specify therein, in addition to all other matters required to be specified in claims:

(1) Whether it is desired to have the claim allowed and approved as a matured secured claim to be paid in due course of administration, in which event it shall be so paid if allowed and approved; or

(2) Whether it is desired to have the claim allowed, approved, and fixed as a preferred debt and lien against the specific property securing the indebtedness and paid according to the terms of the contract which secured the lien,

1. The Honorable Joe Burnett, Justice, succeeded the Honorable Bill J. Stephens, at the expiration of his term, which was between the time the case was submitted and the time it was decided. Justice Burnett has reviewed the briefs and the record before the court.

2. The Honorable John Whittington, Justice, succeeded the Honorable Nathan L. Hecht, at the expiration of his term, which was between the time the case was submitted and the time it was

decided. Justice Whittington has reviewed the briefs and the record before the court.

3. This opinion was originally drafted by Justice Nathan L. Hecht. Because Justice Hecht ascended to the Supreme Court of Texas before this opinion issued, Justice Ed Kinkeade, who sat on the original panel, has become the author of record.

4. All textual references to statutes are to the Texas Probate Code.

in which event it shall be so allowed and approved if it is a valid lien....

\* \* \* \* \* \*

(c) *Approved Claim as Preferred Lien Against Property.* When an indebtedness has been allowed and approved under Paragraph (2) of Subsection (a) hereof, no further claim shall be made against other assets of the estate by reason thereof, but the same thereafter shall remain a preferred lien against the property securing same, and the property shall remain security for the debt in any distribution or sale thereof prior to final maturity and payment of the debt.

TEX.PROB.CODE ANN. § 306(a) & (c) (Vernon 1980). The trial court allowed the claim as a preferred lien. San Antonio Savings then presented its secured claim to the estate and also requested a preferred lien against the property. In response, the administrator filed a "Memorandum of Allowance" stating: "Having examined the Authenticated Secured Claim of San Antonio Savings Association, and subject to the expenses of preserving such property and liquidating same, I hereby ALLOW that claim in its entirety." The trial court approved San Antonio Savings' claim as allowed by the administrator, and it further determined that San Antonio Savings' lien was superior to the lien of University Savings.

Several weeks after San Antonio Savings' claim was approved, the administrator disclosed for the first time that the estate's "expenses of preserving such property and liquidating same" amounted to some $15,000.00, most of which was for legal services rendered by himself and others in his law firm. San Antonio Savings objected to payment of such expenses out of the sale proceeds of the property and filed this action against the administrator for a declaration that the property be sold free and clear of the administrator's claim. The administrator responded with a cross-claim itemizing the expenses allegedly incurred by the estate in preserving and maintaining the property. Those expenses fell into three categories: (1) expenses paid to maintain the property, including utilities, pool service, lawn care, repairs, and photocopies, totaling $3,749.36; (2) estimated closing costs of $1,650.00; and (3) attorney's fees, totaling $18,900.80. Altogether, the expenses sought by the administrator at the time the cross-claim was filed amounted to $24,300.16. The administrator asserted that the time he and others in his law firm continued to spend in connection with this case was also an expense chargeable against the property. Thus, by the time of trial, attorney's fees sought by the administrator had risen to $24,782.50, and the total claim to $28,528.86. The legal services for which the administrator claimed reimbursement were for:

--- obtaining a lower appraised value for the property for ad valorem tax purposes;

--- appearing in court in connection with San Antonio Savings' claim and its priority over University Savings' claim;

--- asserting the estate's claim for expenses against the property;

--- preparing for and giving the administrator's deposition in this case;

--- calculating the amount of the estate's claim for trial; and

--- estimating the time involved in closing the sale of the property.

The trial court found that all the expenses and legal fees claimed by the administrator were "directly attributable to the maintenance, preservation and sale of the Property." Accordingly, the trial court rendered judgment that the property be sold, that the administrator be paid $28,328.96 from the sales proceeds, and that the balance of the proceeds be paid first to San Antonio Savings to the extent of its claim, then to University Savings to the extent of its claim, and finally any remainder to the estate.

### ACTION TIMELY FILED

At the outset, the administrator argues that this action by San Antonio Savings was not timely filed under section 313, which states: "When a claim or part thereof has been rejected by the representative, the claimant shall institute suit thereon ...

within ninety days after such rejection, or the claim shall be barred." TEX.PROB. CODE ANN. § 313. The administrator argues that although in his "Memorandum of Allowance" he allowed San Antonio Savings' claim "in its entirety," he expressly made that allowance "subject to the expenses of preserving such property and liquidating same." Taken as a whole, the administrator contends, San Antonio Savings' claim was thus partially rejected.

■ We disagree. The administrator allowed San Antonio Savings' claim in full and did not dispute any part of it. It appears that the value of the property is less than San Antonio Savings' claim. That circumstance, however, does not mean that San Antonio Savings' claim has been partially rejected. If the expenses for which the administrator seeks reimbursement are accorded priority over San Antonio Savings' claim, that claim may be satisfied to an even lesser extent than if it had priority over the expenses. Again, however, that circumstance does not effectuate a partial disallowance of a claim allowed in full by the administrator. Whether a claim is allowed in full or partially rejected depends upon the virtue of the claim itself, not upon the value of the property against which the claim is asserted. A determination of the relative priority of claims, coupled with circumstances making payment in full of all claims unlikely, is not a partial rejection of those claims.

We therefore conclude that this claim by San Antonio Savings is not governed by section 313 and was not untimely filed.

## ALLOWABLE EXPENSES

The parameters of what estate administration expenses can and cannot be charged against property subject to a section 306 preferred lien are not disputed by the parties in this case. At one end of the spectrum, the parties, constrained by case law, agree that general estate administration expenses cannot be charged against such property. *See Wyatt v. Morse*, 129 Tex. 199, 204–05, 102 S.W.2d 396, 398–99 (1937); *Dallas Joint–Stock Land Bank v. Maxey*, 112 S.W.2d 305, 307–09 (Tex.Civ.App.—Dallas 1937, no writ). At the other end of the spectrum, the parties also seem to agree that expenses and fees incidental to selling such property are chargeable against sales proceeds from the property. *See Maxey*, 112 S.W.2d at 307. The dispute in this case is where along this spectrum the expenses claimed by the administrator lie.

■ We have been directed to no authority either allowing or prohibiting charging against the sales proceeds of property subject to a section 306 preferred lien the expenses directly related to preservation and maintenance of the property. Although the Probate Code does not appear to address the issue, logic and equity dictate that such expenses be paid from funds derived from the sale of such property. An estate creditor with a section 306 preferred lien must look solely to the property subject to the lien for payment of his claim and is not entitled to share in the other assets of the estate. It would therefore be unfair to require him, in effect, to bear part of the general expense of administration of the estate. It would be equally unfair, however, to require nonpreferred estate creditors to pay to preserve and maintain preferred lien property, the proceeds from the sale of which will benefit first, foremost, and often exclusively, the preferred lien creditor. In fairness to all parties, and in the silence of the Probate Code, we hold that administration expenses directly related to preserving, maintaining, and selling property subject to a section 306 preferred lien may, as a rule, be charged against and paid first out of the sales proceeds of the property.

■ In this case, it appears quite plain from the record that some, but not all, of the expenses claimed by the administrator are allowable under the above rule. The $1,650.00 estimated for legal services in closing the sale of the property is undisputedly reasonable and clearly allowable as incidental expenses of selling the property. It seems rather obvious from the record that the $3,749.36 paid for utilities, pool service, lawn care, repairs, and photocopies are directly related to preserving the property. Without payment of such expenses,

particularly before San Antonio Savings made its section 306 election, the property would have deteriorated and its value to the estate would have diminished. By the same reasoning, the administrator's efforts to obtain a reduced valuation of the property for ad valorem tax purposes helped preserve its value, and his legal fees for those efforts should be paid from the sales proceeds of the property; however, the record does not reflect the amount of such fees.

 On the other hand, the record does not establish how any involvement by the administrator in the dispute over the relative priority of San Antonio Savings' and University Savings' liens did anything to preserve or maintain the property. This dispute, in clear contrast to the dispute as to the tax valuation of the property, did not jeopardize the value of the property to either of these claimants or to the general estate. Additionally, the record does not reflect how the legal services rendered by the administrator and his colleagues to force payment of the above expenses from the property helped in any way to preserve or maintain the property. On the contrary, the record reflects, if anything, that the administrator's efforts to enforce payment from the property benefited only the general estate and the nonpreferred creditors, not San Antonio Savings or the property. From the record before us, it appears that the administrator's protracted involvement in attempting to enforce payment from the property of nonallowable expenses benefited only the administrator.

We find evidence of over $5,400.00 spent to preserve, maintain, and sell the property. The administrator should certainly have been able to present the estate's claim for this amount without incurring legal fees of more than four times the claim. Of the $28,000.00 plus expenses ordered by the trial court to be paid from the sales proceeds of the property, more than $20,000.00 resulted in no discernable benefit to the property, the preferred creditor, the estate, or the nonpreferred creditors.

## CONCLUSION

San Antonio Savings assigns a single point of error complaining that the trial court's award of attorney fees to the administrator was barred as a matter of law by section 306. We hold that the trial court's award was in part allowed by section 306 and in part unjustified on this record. It might be argued that we have in reality held that the evidence is not sufficient to support the judgment and thus decided the case on a point not assigned by appellant. In our view, however, we have not exceeded our authority by deciding this case on unassigned error. The record reflects that the parties and the trial court devoted their attention almost exclusively to the issue of whether, as a rule, any administrative expenses at all were chargeable against property subject to a section 306 preferred claim, and not whether, in this case, the expenses claimed by the administrator fell within the rule. Thus, the parties and the trial court have not had the opportunity to consider what we have now concluded to be the issue in this case.

Because we have found evidence in the record before us to justify clearly an award of $5,399.36, we affirm that portion of the trial court's award. The record does not, however, support the balance of the trial court's award. Accordingly, in the interest of justice, we reverse the additional award of the trial court and remand the case to the trial court for further proceedings to determine, in light of the rule we have held to be applicable, what additional expenses, if any, may be allowable.