TEXAS COMMERCE BANK NATIONAL ASSOCIATION, Appellant,

v.

Michael P. GEARY, Dependent Administrator of the Estate of Steven J. Corey, Appellee.

No. 05–94–01210–CV.

Court of Appeals of Texas, Dallas.

Jan. 28, 1997.

Rehearing Overruled Jan. 28, 1997.

Michael F. Pezzulli, Carol E. Farquhar, Pezzulli & Associates, Dallas, for appellant.

Larry M. Wolfish, Evaleen M. Davis, Geary, Porter & West, P.C., Dallas, for appellee.

Before KINKEADE, OVARD and MALONEY, JJ.

KINKEADE, Justice.

Texas Commerce Bank National Association (TCB) appeals from a summary judgment granted in favor of Michael P. Geary and the denial of TCB's motion for summary judgment on a claim against a decedent's estate. In seven points of error, TCB generally argues: (1) Texas probate code section 306 does not apply to independent administrations (*see* TEX.PROB.CODE ANN. § 306 (Vernon 1980)) (unless otherwise indicated, all statutory references in this opinion are to the probate code as it read in 1991 when the decedent died and the probate court granted letters testamentary); (2) TCB did not elect preferred debt and lien status under section 306; (3) TCB's claim was not a secured claim; (4) Geary's motion for summary judgment became moot when the trial court granted a motion to strike Geary's declaratory judgment causes of action; and (5) bankruptcy proceedings did not affect the estate's liability for TCB's claim. For the reasons set forth below, we affirm the trial court's denial of TCB's motion for summary judgment, reverse the summary judgment granted in favor of Geary, and remand this case for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1986, Steven J. Corey, in his capacity as president of Incorsel International Entertainment Consultants, Inc., executed an $800,000 note, secured by a deed of trust on certain residential real estate. In 1989 Corey and Incorsel executed a loan modification agreement as co-makers. Texas Commerce Bank National Association (TCB) became the holder of this note. Corey died on September 17, 1991. The probate court granted letters testamentary on October 15, 1991 and appointed Michael P. Geary as independent executor of Corey's estate.

In September 1992, Incorsel filed for protection under chapter 11 of the United States Bankruptcy Code. TCB foreclosed on the property securing the note in June 1993, after the bankruptcy court had confirmed a

reorganization plan for Incorsel and lifted the stay on the property. TCB sold the property for $402,000 and also received a $39,720.38 distribution from Incorsel's bankruptcy estate.

On October 6, 1993, upon Geary's motion, the probate court converted Corey's estate to a dependent administration and appointed Geary as dependent administrator. The next month, TCB claimed a deficiency from Corey's estate for the balance remaining on the note. Geary denied the claim, and TCB brought this action to enforce its claim.

Although the record does not contain Geary's original answer and counterclaims, we presume the answer and counterclaims contained declaratory judgment causes of action, because Geary moved for summary judgment asking the court to make several declaratory judgments. TCB filed an answer to Geary's motion for summary judgment along with its own motion for summary judgment. TCB also filed a motion to strike Geary's declaratory judgment causes of action.

Before the court ruled on any of the motions, Geary filed an amended answer and counterclaims. He asserted several declaratory judgment counterclaims against TCB, as well as counterclaims for conversion and constructive trust. He also asserted the affirmative defenses of accord and satisfaction, res judicata, estoppel, and payment.

The court later conducted a hearing on the motions. The court granted TCB's motion to strike Geary's declaratory judgment causes of action but denied TCB's motion for summary judgment. The same day, the court granted Geary's motion for summary judgment, denying TCB's claim. A month after the trial court's judgment, TCB filed an amended petition and motion for rehearing, which the trial court denied.

## APPLICABILITY OF SECTION 306 TO INDEPENDENT ADMINISTRATIONS

The ultimate outcome of this action turns largely on whether section 306 applies to independent administrations through its interaction with section 146 of the probate code. Section 146 states, in part, that an independent executor must pay claims against an estate "in the same order of priority, classification, and proration prescribed" in other code sections. TEX.PROB.CODE § 146. Section 306 of the code provides that personal representatives of estates shall pay *secured* claims in different ways, depending on how a creditor elects to treat his claim. Under section 306, there are two kinds of secured claims that are classified and prioritized differently under sections 320 and 322. A secured creditor may elect to have his claim treated as either: (1) a matured secured claim; or (2) a preferred debt and lien. TEX.PROB.CODE § 306(a). If a secured creditor makes no claim or does not affirmatively elect otherwise within six months after the original grant of letters testamentary, his claim will be treated as a preferred debt and lien. TEX.PROB.CODE §§ 298(a), 306(b) (time period amended by Act of May 27, 1995, 74th Leg., R.S., ch. 1054, § 9, 1995 Tex.Gen. Laws 5207, 5210); *Cessna Fin. Corp. v. Morrison*, 667 S.W.2d 580, 583–84 (Tex.App.—Houston [1st Dist.] 1984, no writ). So, within six months a personal representative will be able to fit a secured claim into one of the two categories set forth in section 306.

If the claim is a matured secured claim, the representative will treat it as third class and pay it, to the extent of the value of the collateral, after first- and second-class claims, but before other lower-class claims. TEX. PROB.CODE §§ 306, 320, 322. If there is not enough money in the estate to pay the first- and second-class claims, however, the representative will invade the collateral for the matured secured claim to pay the higher-priority claims. TEX.PROB.CODE § 322; *see Wyatt v. Morse*, 129 Tex. 199, 204–05, 102 S.W.2d 396, 398–99 (1937). If the entire claim is not satisfied through the collateral, the representative can pay the deficiency as a lower-class claim out of other assets of the estate. TEX.PROB.CODE § 322; *see Wyatt*, 129 Tex. at 204–05, 102 S.W.2d at 398–99.

If a claim is a preferred debt and lien, the representative may either pay the debt off or continue making payments as per the terms of the contract that secured the debt. TEX. PROB.CODE § 306(a)(2) and (c). Regardless of which method the representative chooses,

the creditor will have priority over *all* other debts, *even first- and second-class claims,* to the extent of the value of its collateral. TEX. PROB.CODE ANN. § 306(a)(2) and (c); *see Wyatt,* 129 Tex. at 204–05, 102 S.W.2d at 398–99; *Dallas Joint–Stock Land Bank in Dallas v. Maxey,* 112 S.W.2d 305, 307–09 (Tex.Civ.App.—Dallas 1937, no writ). *But see San Antonio Sav. Ass'n v. Beaudry,* 769 S.W.2d 277, 280 (Tex.App.—Dallas 1989, writ denied) (expenses directly related to preserving, maintaining, and selling collateral may be paid out of the sales proceeds of the property). However, if the entire claim is not satisfied through the collateral, the representative *cannot pay any deficiency* out of other assets of the estate as he could if the claim were a matured secured one. TEX. PROB.CODE § 306(c); *see Wyatt,* 129 Tex. at 204–05, 102 S.W.2d at 398–99.

*The applicability of section 306 is paramount to this action. If TCB had a secured claim against Corey's estate and section 306 applies to independent administrations, TCB cannot succeed on its claim for a deficiency if it elected preferred debt and lien status.* TCB argues section 306 does not apply to independent administrations, and Geary argues that it does. We conclude section 306 applies to independent administrations.

### The *Bunting* Decision

In 1935, before the adoption of the probate code, the supreme court held that the predecessor to section 306 did not apply to independent administrations. *Fischer v. Britton,* 125 Tex. 505, 508–09, 83 S.W.2d 305, 306–07 (1935). The dissent relies on *Bunting v. Pearson,* 430 S.W.2d 470 (Tex.1968), in concluding that section 146 of the probate code did not overrule *Fischer's* holding. We disagree.

In its *Bunting* decision, the supreme court did not address whether section 146 of the probate code overruled *Fischer.* The court did, however, establish a framework for determining when sections of the probate code are applicable to independent administrations.

### Bunting Did Not Revisit Fischer

*Bunting* does not stand for the proposition, as the dissent concludes, that section 146 of the probate code left the holding of *Fischer* intact and that, therefore, section 306 is also inapplicable to independent administrations. The *Bunting* court did not revisit *Fischer* in the sense the dissent implies. In fact, the only reference to *Fischer* in the entire *Bunting* opinion is at the end of a string citation supporting the first sentence of the opinion, which stated what the law was regarding claims against an estate "[p]rior to the adoption of the Texas Probate Code." *Bunting,* 430 S.W.2d at 471.

### The Bunting Analysis

In *Bunting,* the court used a two-part analysis to determine whether three probate code sections (sections 309, 310, and 313 regarding a ninety-day limitation on suits to collect rejected authenticated claims) would apply to independent administrations. Under the court's analysis, other probate code sections apply to independent administrations in either one of two ways. Even if a section did not meet the requirements of the first circumstance, it would apply to independent administrations if it met the requirements of the second circumstance. *See id.* at 473.

The first circumstance in which other code sections apply is when the context of the sections does not preclude applying them to independent *executors. Id.* at 472–73. The context of a section *would* preclude application to independent executors, for example, if the section required supervision by the probate court. *See id.*

The second circumstance in which other code sections apply to independent administrations is if another provision of the code "explicitly and specifically" makes the sections applicable. *Id.* at 473. The independent executor in *Bunting* argued that section 146 did this very thing. *Id.* The court, however, rejected this argument and held that section 146 did not make the three sections at issue in that case applicable to independent administrations, because those sections did not relate to section 146's requirement that independent executors pay

claims in the same order of "priority, classification, and proration" prescribed in the code. *Id.*

In dicta, the court said that section 146 did make sections 320, 321, and 322 applicable to independent administrations because each dealt with issues of priority, classification, or proration. *Id.* The court went further in dicta, saying that the only other part of the code that section 146 could refer to was "the section dealing with exempt property and allowances." *Id.* The court did not consider or address the applicability of section 306 to independent administrations. Its failure to mention this section in its dicta does not require us to hold that section 306 is inapplicable to independent administrations. To the contrary, the analysis in *Bunting* would require us to conclude section 306 is applicable to independent administrations if it relates to the priority, classification, or proration of claims as referred to in section 146.

### Applying the *Bunting* Analysis to Section 306

 Section 306 is applicable to independent administrations because it satisfies the second circumstance of the *Bunting* analysis; *i.e.*, another section of the code, section 146, explicitly and specifically makes section 306 applicable to independent administrations. As recognized in *Bunting*, section 146 explicitly and specifically makes other sections dealing with either priority, classification, or proration of claims applicable to independent administrations. Because section 306 relates to both priority and classification of claims, it applies to independent administrations.

### Fischer Recognized that Predecessor to Section 306 Related to Classification

In 1935, the supreme court recognized that the predecessor to section 306 dealt with classifying claims when it held that article did not apply to independent administrations. *Fischer,* 125 Tex. at 508–09, 83 S.W.2d at 306–07. The court reasoned the article did not apply solely because the legislature did not place the article in the statutory chapter pertaining to independent administrations, "under which presentation and classification

of claims are not required," but instead placed it in the statutory chapter governing dependent administrations, under which "presentation and classification are· required." *Id.* Section 146 of the probate code, however, expressly requires classification of claims in an independent administration. TEX.PROB.CODE ANN. § 146. Because section 146 clearly provides that classification is required in independent administrations, the reasoning of *Fischer* no longer applies.

### Plain Language of Section 306 Shows it Affects Priority and Classification

As detailed above, the plain language of section 306 shows that it affects both the priority and classification of secured claims. Because section 306 treats secured claims differently in terms of classification and priority of payment depending on the claim status the creditor elects, section 306 relates to classification and priority. Therefore, according to the analysis in *Bunting,* section 306 applies to independent administrations because section 146 explicitly and specifically makes sections dealing with either priority, classification, or proration of claims applicable to independent administrations.

### Courts of Appeals Are Split on Applicability of Section 306

We have found no authority applying the *Bunting* analysis to section 306, though several courts of appeals have addressed the applicability of section 306 to independent administrations. At least two courts have applied section 306 in the context of independent administrations. *See Gross Nat'l Bank of San Antonio v. Merchant,* 459 S.W.2d 483, 486 (Tex.Civ.App.—San Antonio 1970, no writ) (under section 306, creditor who, in effect, elected preferred debt and lien status waived right to any deficiency); *Montague v. Brassell,* 443 S.W.2d 703, 705 (Tex.Civ. App.—Beaumont 1969, writ ref'd n.r.e.) (by electing preferred debt and lien status, creditor is subject to restrictions of section 306(c)).

Other courts have expressly said section 306 does not apply to independent administrations. The Waco Court of Appeals, in

*Gibraltar Mortgage & Loan Corp. v. Lerman*, 346 S.W.2d 487 (Tex.Civ.App.—Waco 1961, no writ), said that section 306 does not apply to independent administrations, yet nevertheless reached a result consistent with applying section 306. In *Gibraltar*, a secured creditor requested that its claim be given matured secured status in an independent administration and argued that its entire claim, not just the value of the collateral, should be classified as third class. *Id.* at 487. The court held (as section 306 would require) that the creditor was entitled to third-class priority only to the extent of the value of the collateral and that the deficiency would be treated as a lower-class claim. *Id.* at 488. However, relying on *Fischer* and *Higginbotham v. Alexander Trust Estate*, 129 S.W.2d 352 (Tex.Civ.App.—Eastland 1939, writ ref'd), the court then said that the procedure outlined in section 306 does not apply to independent administrations. *Gibraltar*, 346 S.W.2d at 488. The Texarkana Court of Appeals, in *Joffrion v. Texas Bank of Tatum*, 780 S.W.2d 451, 453 (Tex.App.—Texarkana 1989), *vacated per settlement*, 792 S.W.2d 456 (Tex.1990), relying on *Fischer* and *Gibraltar*, held that section 306 does not apply to independent administrations and allowed a secured creditor to proceed against an estate for a deficiency after it had foreclosed on the property securing its claim. The Waco and Texarkana courts' reliance on *Fischer* and *Higginbotham* is misplaced, however, since both *Fischer* and *Higginbotham* were decided well before the adoption of the probate code and the enactment of section 146.

The Austin Court of Appeals, in *Texas Commerce Bank—Austin, N.A. v. Estate of Cox*, 783 S.W.2d 16 (Tex.App.—Austin 1989, writ denied) (per curiam), was self-contradictory on the application of section 306. In the same sentence, the court said section 306 does not apply to independent administrations, but that "a claimant who chooses to bring its claim within the statute's purpose and intent is entitled to the benefits—and bound by the restrictions—of § 306(c)." *Id.* at 19. Thus, according to the court in *Cox*, section 306 does not apply to independent administrations, but does apply if a creditor so elects. Nevertheless, the court concluded a creditor did not elect preferred debt and lien status by foreclosing on secured property. This result is incongruous.

■ We note the legislature recently amended sections 146 and 322 to make it clear that section 306 applies to independent administrations. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 1054, §§ 1, 24, 1995 Tex.Gen. Laws 5207, 5207–08, 5214, 5214–15 (codified at TEX.PROB.CODE ANN. §§ 146, 322 (Vernon Supp.1996)). These amendments, however, apply only to estates of persons who died on or after January 1, 1996. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 1054, § 30, 1995 Tex.Gen. Laws 5207, 5216. We are aware of the line of cases saying a legislative amendment is presumed to change the law and that courts should adopt a construction that does not render an amendment useless. *See Ex parte Trahan*, 591 S.W.2d 837, 842 (Tex.Crim.App.1979); *American Sur. Co. of New York v. Axtell Co.*, 120 Tex. 166, 177–78, 36 S.W.2d 715, 719 (1931); *Friedrich Air Conditioning & Refrigeration Co. v. Bexar Appraisal Dist.*, 762 S.W.2d 763, 767 (Tex.App.—San Antonio 1988, no writ); *Buckner Glass & Mirror, Inc. v. T.A. Pritchard Co.*, 697 S.W.2d 712, 714 (Tex.App.—Corpus Christi 1985, no writ). Because various courts of appeals have interpreted the probate code in different ways and the supreme court has not addressed the issue, we conclude the legislature amended it to clarify, rather than change, the law regarding the application of section 306 to independent administrations.

None of the cases from the courts of appeals addresses the analysis set forth in *Bunting* or otherwise offers any reason why it should not be followed. Neither does a construction of the recent amendments to the probate code preclude us from applying the *Bunting* analysis to interpret the code as it read before the amendments. Following this analysis, section 306 applies to independent administrations because it satisfies the requirements of at least one of the circumstances the supreme court discussed; *i.e.*, another code section, section 146, explicitly and specifically makes section 306 applicable to independent administrations. We hold that section 306 applied to independent ad-

ministrations even before the recent clarifying amendments to the probate code.

## TCB'S MOTION FOR SUMMARY JUDGMENT

In its fourth point of error, TCB claims the trial court erred in denying its motion for summary judgment. A motion for summary judgment "must stand or fall on the grounds expressly presented in the motion." *McConnell v. Southside Ind. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993). TCB's motion for summary judgment was based solely on the applicability of section 306 to this action. TCB argued that section 306 of the probate code did not apply to independent administrations and was not relevant in this case because the estate was under independent administration when TCB foreclosed on its security interest. TCB further argued that when the estate became a dependent administration, section 306 was irrelevant because TCB's claim at that point had become an unsecured one and section 306 applies to only secured claims. We note that in its motion for summary judgment, TCB did not argue in the alternative that, even before the foreclosure, its claim against the estate was unsecured or that it had elected matured secured status and not preferred debt and lien status. Because TCB did not elect otherwise within six months after the original grant of letters testamentary, we conclude TCB effectively elected preferred debt and lien status. *See* TEX.PROB.CODE §§ 298(a), 306(b); *Cessna Fin. Corp.*, 667 S.W.2d at 583–84. Because section 306 applied when the estate was under independent administration, and TCB elected preferred debt and lien status, we conclude the trial court did not err in denying TCB's motion for summary judgment. We overrule TCB's fourth point of error.

## GEARY'S MOTION FOR SUMMARY JUDGMENT

TCB asserts the trial court erred in granting Geary's motion for summary judgment. In its first point of error, it urges generally that the trial court erred in granting the motion. In the five remaining points of error, TCB argues the trial court improperly granted Geary's motion for summary judgment because: (1) section 306 of the probate code does not apply to independent administrations; (2) TCB did not elect preferred debt and lien status; (3) TCB's claim against the estate was not a secured one; (4) Geary's motion became moot when the trial court granted the order striking Geary's declaratory judgment causes of action; and (5) the bankruptcy reorganization plan did not affect the estate's liability for the claim either by accord and satisfaction or res judicata. Based on our previous discussion, we overrule TCB's fifth point of error regarding the applicability of section 306 and sixth point of error regarding its preferred debt and lien election. We address the remaining points of error.

### Secured or Unsecured Claim

In its third point of error, TCB argues the trial court erred in granting Geary's motion for summary judgment because its claim against the Corey estate was never a secured one, even when the estate was under independent administration. It argues that because Incorsel, not Corey, owned the property securing the note, Corey's obligation was unsecured and TCB's claim against Corey's estate was likewise unsecured. TCB argues that even though TCB was a secured *creditor*, it had an unsecured *claim* against Corey's estate because Corey did not own the collateral securing the note. Because section 306 deals with only secured claims, it would be relevant only if TCB's claim was a secured one.

The contention that TCB's original claim against the estate was unsecured was not before the trial court when it ruled on the motions for summary judgment. In its response to Geary's motion, TCB said the resolution of the case depended on two issues: (1) whether section 306 applies to independent administrations; and (2) whether the bankruptcy reorganization plan affected the estate's liability for TCB's claim. (We address the reorganization plan below.) In its own motion for summary judgment, filed after Geary's motion, TCB argued as though its original claim against the estate was a secured one, saying it was entitled to judg-

ment because section 306 did not apply to independent administrations and, when it finally presented its claim under the dependent administration, the claim had become an unsecured one for the deficiency remaining on the debt after the foreclosure. TCB did not alternatively raise the issue that the claim had never been secured in its response to Geary's motion, in its own motion for summary judgment, or in any other response. TCB first contended its claim against the estate was never a secured one in its motion for rehearing. TCB does not complain on appeal that the trial court erred in denying its motion for rehearing. Therefore, in accordance with TCB's point of error and argument in its brief, we consider the issue of whether TCB's claim was ever secured only in relation to the trial court's grant of Geary's motion for summary judgment.

We do not consider on appeal grounds not raised in the trial court in opposition to a summary judgment motion. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 676 (Tex.1979). By written answer or response to the motion, the nonmovant must fairly apprise the movant and the trial court of the issues the nonmovant contends should defeat the motion for summary judgment, though the nonmovant needs no answer or response to contend on appeal that the grounds expressly presented in the movant's motion are insufficient as a matter of law to support the summary judgment. *Id.* at 678. A nonmovant may not urge on appeal any and every new ground he can think of, nor can he resurrect grounds that he abandoned at the hearing. *Id.*

When the trial court ruled on the motions for summary judgment, TCB argued that it, and not Geary, was entitled to judgment as a matter of law because section 306 does not apply to independent administrations. This assertion would entitle TCB to judgment only if its claim was a secured one covered by section 306. We conclude TCB abandoned this ground for defeating Geary's motion, because the argument on which it relied in its response and in its own motion necessarily presupposed the claim was a secured one before the foreclosure. Accordingly, TCB cannot now raise this issue on ap-

peal. *See id.* Without deciding whether TCB's claim against the estate was secured or unsecured before the foreclosure, we conclude the trial court did not err on this issue when it granted Geary's motion for summary judgment, because TCB had abandoned this argument when the court rendered judgment. We overrule TCB's third point of error.

## Mootness

In its second point of error, TCB argues the trial court erred in granting Geary's motion for summary judgment because the motion became moot upon the striking of Geary's declaratory judgment causes of action. A motion for summary judgment must be supported by pleadings, and the final judgment must conform to the pleadings. *Krull v. Somoza*, 879 S.W.2d 320, 322 (Tex.App.—Houston [14th Dist.] 1994, writ denied). A motion for summary judgment must expressly present the grounds, or reasons, entitling the movant to judgment as a matter of law. *See* Tex.R.Civ.P. 166a(c); *McConnell*, 858 S.W.2d at 339 n. 2, 341. When an order granting summary judgment explicitly states the grounds therefor, we can affirm the summary judgment looking only to those grounds and no others. *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

Geary requested summary judgment as a counterclaimant only and not as a defendant. Geary's motion for summary judgment asked the court to make several declaratory judgments or, alternatively, impose a constructive trust on TCB's foreclosure sale proceeds or award relief for conversion of property. He requested the court to declare that: (1) section 306 of the probate code applies to independent administrations; (2) TCB elected preferred debt and lien status; (3) TCB waived matured secured status; (4) alternatively, TCB must return its foreclosure proceeds; (5) the bankruptcy reorganization resulted in an accord and satisfaction and served as res judicata; and (6) Geary is entitled to attorney's fees. The trial court granted Geary's motion for summary judgment, denying TCB's claim and *declaring:* (1) section 306 of the probate code applies to

independent administrations; (2) TCB elected preferred debt and lien status; and (3) the bankruptcy reorganization plan constituted an accord and satisfaction of TCB's claim as well as res judicata to further litigation. The same day the court granted Geary summary judgment, it struck all of his declaratory judgment causes of action. TCB argues this action rendered Geary's motion for summary judgment moot because there were no longer causes of action underlying the motion.

■ Although Geary originally pleaded the theories of accord and satisfaction and res judicata as declaratory judgment causes of action, in an amended pleading (filed before the court granted summary judgment) he framed those theories as affirmative defenses. The trial court did not strike Geary's affirmative defenses. We conclude Geary's summary judgment motion was not rendered moot to the extent it relied on the reasons of accord and satisfaction and res judicata because the motion sufficiently expressed these grounds. *See McConnell,* 858 S.W.2d at 339 n. 2, 341. We address those grounds below.

■ Geary relies on *Roark v. Stallworth Oil and Gas, Inc.,* 813 S.W.2d 492, 494–95 (Tex.1991), for the contention that the parties "tried" the declaratory judgment claims by consent even though they were "unpleaded" upon the granting of summary judgment. We conclude *Roark* does not support this theory on the facts at issue in this case. In *Roark,* the trial court granted summary judgment on the affirmative defense of no consideration, which was included in the grounds of the motion for summary judgment, but was not alleged in the petition. *Id.* at 493–94. The Texas Supreme Court held a trial court can grant summary judgment on an unpleaded affirmative defense if: (1) the motion for summary judgment requested judgment on that ground; and (2) the opposing party does not object to the absence of a pleading, implying the parties tried the issue by consent. *Id.* at 494–95. Because TCB moved to strike Geary's declaratory judgment causes of action, however, we conclude the parties did not try those claims by consent. Moreover, only some of the unpleaded

causes of action could be characterized as affirmative defenses.

■ Because the trial court struck Geary's declaratory judgment causes of action regarding the applicability of section 306 and TCB's preferred debt and lien status, these grounds were unpleaded when the trial court ruled on the summary judgment. Furthermore, the parties did not try these grounds by consent. *See id.* We conclude the motion for summary judgment became moot regarding the grounds of section 306 applicability and TCB's preferred debt and lien status. The trial court erred in granting summary judgment on these grounds because they were no longer supported by the pleadings. *See Krull,* 879 S.W.2d at 322. We sustain TCB's second point of error to the extent the trial court granted summary judgment on Geary's section 306 and preferred debt and lien status claims.

## Accord and Satisfaction and Res Judicata

In its seventh point of error, TCB argues the trial court erred in granting Geary's motion for summary judgment because the Incorsel bankruptcy reorganization plan did not constitute an accord and satisfaction of, and was not res judicata to, TCB's deficiency claim against Corey's estate.

■ An accord is an agreement in which one party agrees to perform and another party agrees to accept, in satisfaction of a claim, something other than what the party believes himself to be entitled. A satisfaction is the performance of that agreement. *Fortner v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 687 S.W.2d 8, 13 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Reorganization proceedings are judicial, not contractual. *See NCNB Texas Nat'l Bank v. Johnson,* 11 F.3d 1260, 1266 (5th Cir.1994). Corey's estate was not a party to the bankruptcy proceedings or the reorganization plan. Moreover, because the bankruptcy proceedings were judicial, the reorganization plan was not contractual. Without a contract to which Corey's estate was a party, there can be no accord and satisfaction of TCB's claim against the estate.

 Res judicata bars subsequent collateral attacks on a final judgment and requires identity of parties, issues, and subject matter. *Matthews Constr. Co. v. Rosen,* 796 S.W.2d 692, 694 (Tex.1990); *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984). Because Corey's estate was not a party to the bankruptcy proceedings, there is no identity of parties as required for res judicata of this action.

We conclude the bankruptcy reorganization plan did not constitute an accord and satisfaction or res judicata. Therefore, the trial court erred in granting Geary's summary judgment motion on these grounds. We sustain TCB's seventh point of error. Because of our disposition of TCB's second and seventh points of error, we sustain TCB's first point of error.

## CONCLUSION

TCB filed both a motion for summary judgment and a response to Geary's motion for summary judgment taking the position that its original claim against the Corey estate was a secured one. Because this position resulted in abandoning any argument that its claim was ever unsecured, TCB cannot now raise this issue on appeal. For the purposes of this appeal, we therefore assume, without deciding, that TCB had a secured claim against the estate. The issue of whether TCB ever had an unsecured claim against the estate is one that is reserved for argument at the trial court should TCB raise it on remand.

Based on the assumption that TCB had a secured claim against the estate, TCB could have elected matured secured status under section 306 within six months of the original grant of letters testamentary. If it had done so, Geary would have been required to pay TCB the remaining value of the secured real estate after he had paid higher-priority claims. If there was still a balance remaining on the note, TCB could then have claimed a deficiency against the estate. Because TCB did not elect matured secured status within six months of the grant of the original letters testamentary, by default it effectively elected preferred debt and lien status and gave up the right to claim any deficiency on the note.

Because section 306 applies to independent administrations and TCB gave up the right to claim a deficiency, assuming it had a secured claim, we affirm the trial court's denial of TCB's motion for summary judgment. Because the grounds on which the trial court granted summary judgment either were not supported by the pleadings (declaratory judgments on Geary's section 306 and preferred debt and lien counterclaims that had been struck) or were without merit (the estate was not a party to a contract as required for an accord and satisfaction and the estate was not a party to the bankruptcy proceedings as required for res judicata), we reverse the summary judgment granted in favor of Geary. We remand this case for further proceedings consistent with this opinion.

MALONEY, Justice, dissenting.

I agree with the majority's conclusion that the trial court erred in granting Geary's motion for summary judgment. However, I do not agree with the majority that section 306 applies to independent administrations.[1] Because I am convinced that the rule of *Fischer v. Britton,* 125 Tex. 505, 508–09, 83 S.W.2d 305, 306–07 (1935), survived the probate code, I dissent to that portion of the majority's opinion that holds section 306 applies to independent administrations. As a consequence, I would sustain TCB's fourth point of error.

## BACKGROUND

Steven J. Corey, in his capacity as president of Incorsel International Entertainment Consultants, Inc., executed a $800,000 note, secured by a deed of trust of certain residential property. TCB became the holder of this note. Following Corey's death, the probate court appointed Michael P. Geary as independent executor of Corey's estate.

Incorsel continued to make payments on the note until it filed for bankruptcy. Subsequently, TCB foreclosed on the real property

1. *See* TEX.PROB.CODE ANN. § 306 (Vernon 1980). All references in this opinion to any statutes are to the probate code in effect at the time of decedent's death unless otherwise noted.

that secured the note. TCB sold the property for $402,000.

Within a month after the foreclosure, Geary filed to convert the estate to a dependent administration and the probate court appointed Geary as dependent administrator. TCB then submitted to Geary its claim for the deficiency under the note. Geary denied the claim and TCB sued to collect the deficiency under the note.

## TCB'S MOTION FOR SUMMARY JUDGMENT

In TCB's fourth point of error, it contends the probate court erred in denying its motion for summary judgment. TCB moved for summary judgment asking the probate court to: (1) declare that section 306 does not apply to independent administrations, (2) allow its deficiency claim, and (3) grant attorney's fees.

### 1. The Parties' Contentions

TCB contends that section 306 does not apply to independent administrations. It was not until the probate court converted the estate to a dependent administration that TCB presented its claim for the deficiency pursuant to the procedures set forth in section 306.

Geary contends that section 306 applies to independent administrations. He maintains that when TCB sold the property at foreclosure, it impliedly elected preferred debt and lien status under section 306(a)(2). Geary argues that, having elected preferred debt and lien status, TCB has no right to a deficiency.[2] Although several of our sister courts have held that section 306 does not

2. *See* TEX.PROB.CODE ANN. § 306(c) (Vernon 1980). In Geary's application to convert from an independent to a dependent administration, he stated: "In order that each creditor may be satisfied in proportion to its claim in accordance with law, and in accordance with all of the procedures applicable to a dependent administration, as well as all of the rules governing the classification, payment and priority of claims, Applicant requests the Court to convert this Estate to a dependent administration and cause Applicant to become the dependent administrator of this Estate." This language indicates that Geary either did not always believe that section 306 applied to independent administrations, or he was willing

apply to independent administrations, this Court has not addressed the issue.[3]

### 2. Applicable Law

A secured creditor must follow section 306 to perfect his claim against an estate. Section 306 provides:

(a) Specifications of Claim. When a secured claim against an estate is presented, the claimant shall specify therein, in addition to all other matters required to be specified in claims:

(1) Whether it is desired to have the claim allowed and approved as a matured secured claim to be paid in due course of administration, in which event it shall be so paid if allowed and approved; or

(2) Whether it is desired to have the claim allowed, approved, and fixed as a preferred debt and lien against the specific property securing the indebtedness and paid according to the terms of the contract which secured the lien, in which event it shall be so allowed and approved if it is a valid lien; provided, however, that the personal representative may pay said claim prior to maturity if it is for the best interest of the estate to do so.

(b) Handling of Secured Claims Not Presented in Time. If a secured claim is not presented within the time provided by law, it shall be treated as a claim to be paid in accordance with Paragraph (2) of Subsection (a) hereof.

(c) Approved Claim as Preferred Lien Against Property. When an indebtedness has been allowed and approved under Paragraph (2) of Subsection (a) hereof, no further claim shall be made against other assets of the estate by reason thereof, but

to ignore 306 until he deemed it advantageous to recognize its applicability.

3. *See Texas Commerce Bank—Austin, N.A. v. Estate of Cox*, 783 S.W.2d 16 (Tex.App.—Austin 1989, writ denied); *Joffrion v. Texas Bank*, 780 S.W.2d 451 (Tex.App.—Texarkana 1989), *vacated per settlement*, 792 S.W.2d 456 (Tex.1990); *Gibraltar Mortgage & Loan Corp. v. Lerman*, 346 S.W.2d 487 (Tex.Civ.App.—Waco 1961, no writ). *But see Gross Nat'l Bank v. Merchant*, 459 S.W.2d 483 (Tex.Civ.App.—San Antonio 1970, no writ).

the same thereafter shall remain a preferred lien against the property securing same, and the property shall remain security for the debt in any distribution or sale thereof prior to final maturity and payment of the debt.

§ 306. Under this section, a secured creditor must elect whether to have his claim treated as a matured secured claim or as a preferred debt and lien against the property securing the indebtedness. § 306(a)(1) & (2). If a claimant elects the latter option, he may not seek a deficiency from the estate. § 306(c).

In an independent administration, after the inventory and appraisement has been filed and approved by the county court, "further action of any nature shall not be had in the county court except where this Code specifically and explicitly provides for some action in the county court." § 145(h). Section 146 of the probate code provides:

> Payment of Claims and Delivery of Exemptions and Allowances
>
> An independent executor, in his administration of an estate, although free from the control of the court, shall nevertheless, independently of and without application to, or any action in or by the court, receive presentation of and classify, allow, and pay, or reject, claims against the estate in the same order of priority, classification, and proration prescribed in this Code, and set aside and deliver to those entitled thereto exempt property and allowances for support, and in lieu of homestead, as prescribed in this Code, to the same extent and result as if his actions had been accomplished in, and under orders of, the court.

§ 146.

### 3. Application of Law to Facts

TCB relies on *Fischer* as support for its position that section 306 does not apply to independent administrations. *See Fischer*, 125 Tex. at 508–09, 83 S.W.2d at 306–07. Before the legislature enacted the probate code, the *Fischer* court had held that the

predecessor to section 306 did not apply to independent administrations. The majority agrees with Geary that section 146 effectively overruled *Fischer*. I disagree.

In *Fischer*, Britton held a $10,000 note executed by the decedent. The note was secured by certain real property. During the independent administration of the estate, Britton foreclosed on the property and then sought to recover the deficiency from the estate.[4] *Id.* The legislature had added section 306's predecessor to statutes that regulated only court-supervised administrations. The *Fischer* court concluded that the legislature did not intend for a secured creditor's election to apply to independent administrations. *Id.* 83 S.W.2d at 306.

Although *Fischer* predated the probate code, the supreme court revisited *Fischer* after the legislature enacted the probate code. *Bunting v. Pearson*, 430 S.W.2d 470 (Tex.1968). In *Bunting*, the supreme court reversed the judgment of the court of civil appeals and disapproved the court of civil appeals' view that the probate code radically changed precode law. The majority claims that *Bunting* does no more than mention *Fischer* in a string cite. It is true that the *Fischer* case is cited among many others, but I disagree that the "string cite" disposes of the *Fischer* rule. Some opinions influence the common law as much by what they do not say, as by what they do say. *Bunting* is one of those cases.

A look at the *Bunting* facts proves enlightening. Bunting filed claims with the independent executrix for services rendered to the deceased. The independent executrix took no action on the claims. More than ninety days later, Bunting filed suit on her claims. The trial court ruled for Bunting. The court of civil appeals reversed the trial court's judgment and held that section 313 applies to independent administrations.[5] *Id.* In reversing the court of civil appeals, the supreme court acknowledged several precode cases, *Fischer* among them, that held that general provisions regulating the procedures for establishing claims against an estate did

---

4. Fischer was an executor of the deceased's estate.

5. Section 313 requires that suit be brought within ninety days after a claim is rejected.

not apply to estates administered by an independent executor. *Id.* at 471.

The supreme court then interpreted section 146 as follows:

Prior to the adoption of the Code the courts had held that "independent executors" were required to handle claims in accordance with provisions of the statute dealing with classifications, priority and proration of claims. It appears to us that section 146 carries forward the law in this respect, as it existed prior to the adoption of the [C]ode. The phrase [in section 146] "in the same order of priority, classification, and proration prescribed in this code" refers to sections 322 dealing with classification; 321 dealing with proration; and 320 dealing with priority. The only other part of the Code that this section could have reference to is the section dealing with exempt property and allowances.

*Id.* at 473. *Bunting* confirms that section 146 does not overrule *Fischer.*

The majority discusses the two-part analysis of *Bunting* and then states that no other court addressing the applicability of section 306 to independent administrations has applied this analysis. No other court has applied this analysis because the supreme court never established this analysis. Rather, the majority authors a new two-part analysis. According to the majority, other code sections apply to independent administrations when either (1) the context of the sections does not preclude applying them to independent executors or (2) another provision of the code "explicitly or specifically" makes the sections applicable to independent administrations. The majority concludes that section 146 makes section 306 applicable to independent administrations.

The *Bunting* court simply held that section 146 does not make section 313 applicable to independent administrations. In so holding, the *Bunting* court recognized that section 146 merely codified precode law requiring independent executors to handle claims in accordance with provisions of the statute dealing with classification, priority, and proration of claims. *Id.* at 473. The majority fails to recognize that the section 146 requirement existed before the probate code.

Enactment of the probate code and section 146 did not change the relationship of section 306 to independent administrations.

In 1995, the legislature amended section 146 to make the election requirement of section 306 applicable to independent administrations. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 1054, § 1, 1995 Tex.Sess. Law Serv. 5207, 5207–5208 (codified at Tex.Prob.Code Ann. § 146 (Vernon Supp.1996)). The effective date of this Act is January 1, 1996. The majority concludes that the legislature amended section 306 to "clarify" section 306. That of course is the majority's opinion. Nothing in the legislature's language indicates it is "clarifying" pre-existing law. Rather, we note that section 30 of the 1995 Act provides: "The *change* in law made by this Act applies only to the estates of persons who die on or after the effective date of this Act. An estate of a person who dies before the effective date of this Act is covered by the law in effect when the person died, and the former law continues in effect for that purpose." Act of May 27, 1995, 74th Leg., R.S., ch. 1054, § 30, 1995 Tex.Sess. Law Serv. 5207, 5216 (emphasis added). Accordingly, I am convinced the legislature *changed,* not "clarified," the law. Why else would it have concluded that the *changes* should apply only to persons that died after the effective date of the amendments?

It is the *Fischer* and *Bunting* courts' reasoning that forces my conclusion that section 306 does not apply to independent administrations. Consequently, because this estate was an independent administration until the bankruptcy court allowed TCB to sell the property at foreclosure, TCB had no reason to follow the procedures of section 306. If TCB was not required to follow the section 306 procedures, it never had to make the election under section 306. Therefore, section 306(c) cannot bar its deficiency claim. I would sustain TCB's fourth point of error.

I would reverse the probate court's judgment and render judgment declaring that section 306 does not apply to independent administrations and allowing TCB's deficiency claim. I would then remand this cause to

the probate court solely on the issue of TCB's attorney's fees.